UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TIMIKA SCOTT                                                            CIVIL ACTION

VERSUS

CITY OF BATON ROUGE/PARISH
OF EAST BATON ROUGE, ET AL.                            NO. 22-00488-BAJ-EWD

RULING AND ORDER

    This case levels serious allegations regarding the quality of medical care provided to detainees at the East Baton Rouge Parish Prison (EBRPP). But does it raise a viable constitutional claim? This question cannot be answered at present because Plaintiff's Complaint, in its current form, is so scattershot that its claims of an unconstitutional healthcare system at EBRPP are indeterminable. On this basis, Plaintiff's constitutional claims will be dismissed, and Plaintiff will be required to resubmit her Complaint, conforming her allegations to the federal pleading requirements, so that Defendants *and* the Court may be apprised of the *actual* conditions and policies that are the basis of her constitutional claims.

    **I.  BACKGROUND**

    On July 20, 2021, Gwendolyn Simon—a retired government employee, active church member and volunteer, mother, grandmother, and lifelong resident of Baton Rouge, Louisiana—was arrested for the first time, following a domestic altercation. (Doc. 23 at ¶¶ 13-14). At 1:30 a.m., Ms. Simon was booked into EBRPP's jail on charges of aggravated battery and simple damage to property. (*Id.* at ¶¶ 13, 15). Fifteen hours later Ms. Simon was dead. She was not mentally ill, and her death was

1

not self-inflicted, caused by violence, or otherwise attributable to the physical conditions of her confinement. Rather, as alleged, she died of complications of congestive heart failure, due to prison officials' refusal to dispense her prescribed heart medication (Lasix). (*Id.* at ¶¶ 17, 19, 25-27).

In this action, Plaintiff Timika Scott, Ms. Simon's daughter, seeks to hold multiple parties accountable for her mother's death, including Ms. Simon's jailers—East Baton Rouge Parish Sheriff Sid Gautreaux, and EBRPP Supervisor Dennis Grimes—the City of Baton Rouge/Parish of East Baton Rouge (the "City-Parish"), and a private company contracted by the Sheriff and the City-Parish to provide medical care to detainees at EBRPP—CorrectHealth East Baton Rouge, LLC ("CorrectHealth EBR"). (Doc. 23 at ¶¶ 3-9). Plaintiff's claims include all the hallmarks of a traditional state-law wrongful death and survival action. (*Id.* at ¶¶ 49-58).

Additionally, and most relevant here, Plaintiff contends that the events preceding Ms. Simon's death implicate constitutional concerns, first because EBRPP allegedly maintains a healthcare "system" in which pre-trial detainees "with serious chronic health issues are denied access to appropriate medical care," (*id.* at ¶¶ 43-44, "Count 1"), and, second, because EBRPP allegedly implements *de facto* "policies" under which pre-trial detainees "with serious chronic health issues are denied access to appropriate medical care," (*id.* at ¶¶ 45-48, "Count 2"). Plaintiff pursues these constitutional claims against multiple Defendants, in their "official capacities" only.

Now, the City-Parish, Sheriff Gautreaux, Supervisor Grimes, and CorrectHealth EBR (collectively, the "Moving Defendants") each seek dismissal of

2

Plaintiff's action under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 27, Doc. 29, Doc. 31). For reasons set forth below, the Court agrees that Plaintiff's Complaint, in its current form, suffers multiple flaws, the sum of which obscures any meaningful review of the merits of her constitutional claims. On this basis, the Court will grant the Moving Defendants' motions. Still, the Court will allow Plaintiff the opportunity to amend her complaint to conform with the federal pleading standards, and to state actionable federal claims.[1]

## II. ANALYSIS

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a

---

[1] For present purposes, the Court limits its analysis to the Moving Defendants' challenge to Plaintiff's constitutional claims, as these are the only claims providing a basis for federal jurisdiction. Pending receipt of Plaintiff's amended complaint (if any), the Moving Defendants may, of course, renew their challenge to the sufficiency of Plaintiff's allegations (as they relate to her federal *and* state law claims).

3

formulaic recitation of the elements of a cause of action" is required. *Twombly,* 550 U.S. at 555.

There are, of course, many ways for a plaintiff to stumble at the pleading stage. Perhaps the most vexing—at least from the Court's view—is when the complaint patently violates Rule 8's command of "a short and plain statement," in favor of a shotgun approach that packs so many redundancies and irrelevant allegations into what *might* be a meritorious claim that it is impossible to accurately understand the scope of the dispute. This Court has expressly cautioned litigants (and their counsel) against this "everything but the kitchen sink" approach, explaining that "shotgun pleadings" come in various forms, but their "unifying characteristic … is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *O'Neal v. Universal Prot. Serv., LLC*, No. 21-cv-00737, 2022 WL 1631970, at *5 (M.D. La. May 23, 2022) (Jackson, J.) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

> Shotgun pleadings are pernicious because they unfairly burden defendants and courts by shifting onto them the burden of identifying plaintiff's genuine claims and determining which of those claims might have legal support. If tolerated, shotgun pleadings harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard.

*Id.* (quoting *In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021)).

Here, *perhaps*, Plaintiff's Complaint raises concerns of constitutional magnitude. Stripped of superfluous detail, Plaintiff alleges that unnamed prison officials knowingly refused Ms. Simon her prescribed heart medication—ignoring

4

repeated requests from Ms. Simon, Plaintiff, and even other pre-trial detainees—directly resulting in Ms. Simon's death from complications of congestive heart failure. (Doc. 23 at ¶¶ 17, 19-27, 43, 45). Withholding critical care from a detainee, even once, may establish a basis for constitutional liability, at least when the claim is targeted at an *individual* state officer. *See, e.g.*, *Marlowe v. LeBlanc*, No. 18-cv-00063, 2023 WL 2957810, at *5 (M.D. La. Apr. 14, 2023) (Jackson, J.) (citing authorities).

Here, however, Plaintiff does not pursue individual capacity claims against the EBRPP staff and medical personnel that refused Ms. Simon her medication. Instead, she pursues only "official capacity" claims, adding an additional layer of complexity that ultimately is her undoing. *See Carter v. Gautreaux*, No. 19-cv-105, 2021 WL 2785332, at *3 (M.D. La. July 2, 2021) (Dick, C.J.) ("If a plaintiff establishes that an individual acted with deliberate indifference, and the plaintiff seeks to hold that individual's municipal actor-employer liable, the plaintiff must satisfy additional requirements.").

First, Plaintiff inexplicably "lumps" multiple Defendants together for purposes of her "official-capacity" claims. (*See* Doc. 29-1 at p. 19). But why? As a rule, "official capacity suits are really suits against the governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009); *accord Kentucky v. Graham*, 473 U.S. 159, 165 n.14 (1985); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978). Including more "official capacity" defendants than is necessary to set a target on the offending entity is "redundant" and merely invites confusion. *See Perron v. Travis*, No. 20-cv-00221, 2021 WL 1187077, at *4 (M.D. La. Mar. 29, 2021) (Jackson, J.).

Count 1—Plaintiff's conditions of confinement claim—alleges that "insufficient services for medical care" at EBRPP resulted in Ms. Simon's death. (Doc. 23 at ¶ 43). Sheriff Gautreaux, EBRPP's "keeper," La. R.S. § 15:704, and a party to the December 16, 2021 Health Service Agreement under which medical care at EBRPP is outsourced to CorrectHealth EBR, (Doc. 43-1), is the appropriate Defendant to answer this "official capacity" claim.[2] Why also include the City-Parish, CorrectHealth EBR, and CorrectHealth, LLC (CorrectHealth EBR's Atlanta-based parent company)? "Official capacity" claims against these entities proceed in the same manner as Plaintiff's claim against the Sheriff. *E.g. Graham*, 473 U.S. at 167 n.14 (official capacity claims against public officials and local government unites are indistinguishable); *Bowers v. McGee*, No. 14-cv-0131, 2015 WL 6554020, at *2 (M.D. Tenn. Oct. 29, 2015) (Brown, M.J) (official capacity claims against "private contractor 'state actors'" … proceed in the same manner" as any other official capacity claim); *accord Carter v. Gautreaux*, No. 19-cv-105, 2020 WL 6251186, at *5 (M.D. La. Oct. 22, 2020) (Dick, C.J.). Under the normal rules, the scope of municipal liability is *not* somehow expanded by simply adding more "official capacity" defendants, *see Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cpir. 2001); *Goodman*, 571 F.3d at 396, and

---

[2] Even naming Sheriff Gautreaux as the Defendant to this "official capacity" claim creates tension with the Supreme Court's general rule that "[t]here is no … need to bring official-capacity actions against local government officials" because "under *Monell*, … local government units can be sued directly." *Graham*, 473 U.S. at 167 n.14. This Court has previously ruled, however, that EBRPP itself is "not a legal entity capable of being sued." *Mason v. E. Baton Rouge Par. Prison Sheriff Off.*, No. 16-cv-0205, 2016 WL 8223432, at *2 (M.D. La. Dec. 8, 2016) (Wilder-Doomes, M.J.) (citing authorities), *app'd* 2017 WL 522952 (M.D. La. Feb. 8, 2017) (Dick, C.J.). As such, Sheriff Gautreaux is the appropriate stand-in for EBRPP.

6

Plaintiff offers no explanation in her Complaint *or* her 12(b)(6) opposition regarding why these additional Defendants are essential to this Claim, adding something that the Sheriff does not already provide. The City-Parish,[3] CorrectHealth EBR, and CorrectHealth, LLC are redundant to Sheriff Gautreaux, and will be dismissed from Count 1. *E.g.*, *Perron*, 2021 WL 1187077, at *4 (dismissing redundant "official capacity" defendants); *Marlowe v. LeBlanc*, No. 18-cv-00063, 2023 WL 2957810, at *3 (M.D. La. Apr. 14, 2023) (Jackson, J.) (same); *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) (Ellison, J.) (same).

Count 2—Plaintiff's unconstitutional policies claim—alleges that Ms. Simon's death resulted from EBRPP policies that deprived pre-trial detainees "with serious medical conditions, namely, chronic congestive heart failure, of treatment." (Doc. 23 at ¶ 45). Again, Sheriff Gautreaux, EBRPP's "keeper" and daily overseer, is the appropriate Defendant to answer this charge. And, again, Plaintiff offers no reason why the City-Parish (whose authority does not extend to daily oversight), *and* Supervisor Grimes (who is plainly duplicative of Sheriff Gautreaux), *and* CorrectHealth EBR, *and* CorrectHealth, LLC are also required. These Defendants are not necessary and will be dismissed from Count 2, eliminating redundancy.

Unfortunately, the confusion does not end here. In addition to having named

---

[3] The Court acknowledges some superficial appeal to keeping the City-Parish as a Defendant to Count 1, insofar as the City-Parish's authority expressly extends to contracting for EBRPP's health care services, La. R.S. § 15:703, and, indeed, the City-Parish is also a party to the December 16, 2021 Health Service Agreement. (Doc. 43-1). But, again, Plaintiff cannot expand the scope of official capacity liability simply by adding more Defendants. *See Castro Romero*, 256 F.3d at 355; *Goodman*, 571 F.3d at 396. Sheriff Gautreaux is both necessary and *sufficient* to defend Plaintiff's official-capacity conditions of confinement claim.

7

redundant Defendants, Plaintiff has muddied her "official capacity" claims even more by basing them on irrelevant allegations.

Again, Plaintiff pursues two separate theories of constitutional liability to challenge the medical care provided to Ms. Simon—unconstitutional conditions (Count 1) and unconstitutional *de facto* policies (Count 2). Nonetheless, Plaintiff concedes that each claim shares essentially the same element: to prevail, Plaintiff must show "a pattern of acts or omissions sufficiently extended or pervasive … to prove an intended condition or practice" at EBRPP. *See Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *see also Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 208 (5th Cir. 2011) (observing that there is "no meaningful difference between" proving "persistent and widespread customs" sufficient to establish an unconstitutional *de facto* policy "under the *Monell* test," and "an intended condition or practice" sufficient to establish unconstitutional conditions of confinement).

Plaintiff's conditions of confinement claim (Count 1) alleges that Ms. Simon died due to "insufficient services for medical care" provided by EBRPP's contracted healthcare provider, CorrectHealth EBR. (Doc. 23 at ¶ 43). Such a claim is hardly new or unique. *E.g.*, *Carter*, 2021 WL 2785332. Here, however, Plaintiff flails wildly in her attempts to show that insufficient medical care was "an intended condition" at EBRPP, *see Shepherd*, 591 F.3d at 452, complaining of everything from "defects in physical design," (Doc. 23 at ¶ 38), to "a decrepit physical facility," (*id.* at ¶ 39), to "overpopulation," (*id.* at ¶ 39(j)), to "violence on a daily basis," (*id.* at ¶ 39(w)), *none* of which have any relevance to Plaintiff's allegations that Ms. Simon died due to

8

prison officials' knowing failure to administer her medication. To put a finer point on it, and as just one example, how does the following allegation in *any* way prove a pattern of insufficient *medical* services?

> According to a recently filed class action: "The jail was built in 1965, with no substantive renovations since the 1980s. Even the parts of the facility that are not condemned are crumbling and decrepit. The buildings where people are housed are in terrible condition. The roof leaks, the walls and floors are filled with mold and rust, the showers and toilets are broken or bug-infested on many of the housing lines ("lines"), the windows are so dirty that detainees cannot see out of some of them, and rats have overrun some dorm areas, requiring detainees to sleep with their food to prevent it from being eaten by vermin. On some lines, the walls are streaked with blood and other bodily fluids. The bars on the housing lines are 'gunked up with mold, juice, spit, and old food.'"

(Doc. 23 at ¶ 39(dd)). Plaintiff does not explain.

The same surplusage plagues Plaintiff's unconstitutional policies claim. As stated, this claim challenges EBRPP's *de facto* policy of failing to treat pre-trial detainees "with serious medical conditions, namely, chronic congestive heart failure." (Doc. 23 at ¶ 45). But the prior incidents Plaintiff cites to prove a pattern of similar abuse include examples of pre-trial detainees *refusing* to take their medication (the opposite of that alleged here), (*id.* at ¶ 30(a)), 39(f), 38(g)), detainees committing suicide, (*id.* at ¶ 39(t)), detainees being killed by other detainees, (*id.* at ¶ 39(r)), and detainees being sexually assaulted by other detainees, (*id.* at ¶ 39(u), 39(v)). The majority of these prior incidents appear to involve detainees suffering serious mental health issues. While appalling, these prior incidents are not even *remotely* similar to the alleged abuse at issue here, and plainly cannot sustain a claim that EBRPP implemented a *de facto* policy of failing to treat pre-trial detainees suffering from "chronic congestive heart failure." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838,

9

851 (5th Cir. 2009) ("A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." (quotation marks omitted)).

It is not this Court's job to pan Plaintiff's flood of irrelevant allegations in an effort to find one or two flecks of gold that might possibly support her constitutional claims. Plaintiff's shotgun approach renders her stated claims virtually meaningless, depriving Defendants of notice of the actual claims against them, and the grounds upon which each claim rests. *See O'Neal*, 2022 WL 1631970, at \*5. Plaintiffs' constitutional claims (Counts 1 *and* 2), as written, will be dismissed.

When a complaint fails to state an actionable claim, the Court should generally afford the plaintiff an opportunity to amend before dismissing the claim with prejudice, unless it is clear that to do so would be futile. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is not clear that Plaintiff's constitutional claims are necessarily futile, particularly given her core allegation that prison authorities withheld critical care from Ms. Simon. As such, the Court will give Plaintiff the benefit of the doubt, and allow her to amend her Complaint within 21 days of the date of this Order.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the Moving Defendants' motions to dismiss **(Doc. 27, Doc. 29, Doc. 31)** each be and are hereby **GRANTED IN PART**, and that Plaintiff's official-capacity federal constitutional claims (Counts 1 and 2) be and are hereby

10

**DISMISSED** for the reasons set forth herein. In all other respects, the Moving Defendants' motions be and are hereby **DENIED**, without prejudice to the Moving Defendants' right to re-assert their arguments pending submission of Plaintiff's amended complaint (if any).

**IT IS FURTHER ORDERED** that Plaintiff shall submit an amended complaint addressing the deficiencies set forth herein within 21 days of the date of this Order. **Plaintiff's failure to timely submit an amended complaint will be deemed a waiver, and result in dismissal with prejudice of Plaintiff's constitutional claims (Counts 1 and 2).**

Baton Rouge, Louisiana, this 31st day of May, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**